## Hiram D. Wagner et al., Appellants, v. H. H. Evans et al., Appellees.

### Gen. No. 21,311.   (Not to be reported in full.)

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed April 28, 1916.

### Statement of the Case.

Hiram D. Wagner and seventy-seven other complainants, former bondholders of the Interstate Independent Telephone and Telegraph Company, a New Jersey corporation, filed a bill in the Circuit Court of Cook county against H. H. Evans, B. E. Sunny and the following corporations: Chicago Telephone Company, Central Union Telephone Company, American Telephone and Telegraph Company, and the First Trust and Savings Bank of Chicago, defendants. The bill alleged *inter alia* that complainants had been the owners of 778 bonds of the Interstate Company of the par value of $778,000, and that they held stock of the Interstate Company of the par value of $778,000, which stock had been given them as purchasers of said bonds "as a bonus"; that prior to the month of June, 1910, the American Telephone and Telegraph Company owned a controlling interest in the capital stock of the Chicago Telephone Company, carrying on a telephone business in Chicago and its suburbs, and of the Central Union Telephone Company, engaged in the telephone business in Illinois outside of Chicago, and that said corporations are known as "Bell" companies; that at and prior to June, 1910, the Interstate Company was doing business in certain named cities in Illinois as a competitor of said Bell companies; that the defendant H. H. Evans was president and a member of the board of directors of the Inter-

state Company from its organization until some time in September, 1910, and that the defendant B. E. Sunny was an officer and director in said Bell companies; that prior to June, 1910, the Interstate Company's business had been steadily increasing and that it had always promptly paid the interest on its bonds and promptly met all of its obligations; that during the months of March, April and May, 1910, said Bell companies, acting through Sunny, and Sunny individually, "entered into a conspiracy" with Evans to remove the Interstate Company as a competitor and rival of said Bell companies, and that Evans, "in violation of his trust and obligations" as an officer and director of the Interstate Company "fradulently and unlawfully" agreed to aid and assist Sunny in securing a controlling interest in the Interstate Company and in "wrecking" its business; that they agreed among themselves to "endeavor to depreciate the market price" of the stock and bonds of the Interstate Company so that the same could be procured at the lowest possible price, that Evans should send out letters and circulars "calculated and adapted to depreciate the market value of said bonds," that when the value of the bonds had become sufficiently depreciated the Bell companies would purchase a majority of them, with the bonus stock belonging thereto, at sixty-six and two-thirds per cent. of their face value, and that upon the consummation of said purchase the Bell companies would pay Evans the difference between sixty-six and two-thirds per cent. of the par value of said bonds and whatever price was paid to the holders thereof; that in pursuance of the conspiracy Evans caused to be sent out to complainants and other holders of said bonds such letters and circulars, and that as a result "certain" complainants and "certain" other bondholders consulted with Evans, and that he "fraudulently" expressed the opinion "to such of the bondholders as so advised with him" that any holder who could sell his

bonds for sixty per cent. of the par value thereof was fortunate, and "falsely and fraudulently represented" that he was willing to sell all such bonds which he held at said price, and that to "divers" complainants and other bondholders he made "false statements" as to the financial and physical condition of said Interstate Company; that the result of Evans' actions was to cause a "loss of confidence" on the part of complainants and other bondholders as to the value of said bonds and as to the financial soundness of the Interstate Company, and to depreciate the market price of said bonds; that complainants (except Bailey and Stromberg), fearing a further depreciation, agreed to sell "and did sell" their bonds (together with the bonus stock received therewith) for sixty per cent. of their par value; that complainant Bailey sold his bonds of the par value of $192,000 for $101,000, and complainant Stromberg sold 56 of his bonds for forty-five per cent. of their par value and 44 of his bonds for forty-four and one-half per cent. of their par value; that in order to secure these prices a "majority of complainants" were obliged to and did deliver with their bonds stock of the Interstate Company of equal par value, and that complainants delivered said bonds and stock to the defendant First Trust and Savings Bank of Chicago, which had been designated as the place where the same should be deposited, and received payment for the "bonds" at the rates above mentioned; that said bank received the funds to make said payments from said Bell companies or from said Sunny, and said bonds, with the bonus stock attached, were delivered by said bank to said Bell companies or Sunny, acting in their behalf; that said bank should be required to discover the source from which it received said funds, and furnish all the details of said transactions; that complainants, at the times of said several deliveries of said bonds and stock, did not know and had no means of ascertaining who was the

purchaser of the same, but believed that the several prices offered were the prices which said purchaser was paying therefor; that they did not then know of said "conspiracy" or of the "fraudulent and unlawful profit" resulting to said Evans as his "reward" for the carrying out of the said conspiracy; that, after the payment to complainants and "such other bondholders as had deposited their bonds," there remained in the hands of said bank over $90,000, which had been there deposited by said purchaser and "which fund in equity and good conscience belonged to and was the property of complainants and other of said bondholders"; that said fund was "wrongfully and in fraud of the rights" of complainants paid to Evans or to Sunny as their reward for carrying out said conspiracy; that said bonds with the bonus stock attached, so deposited with said bank, amounted to a majority of the outstanding bonds and stock of the Interstate Company, and that said bank refused to accept or purchase any more of said bonds with said bonus stock attached; that "all of the above acts" on the part of Evans, Sunny and the Bell companies were done in pursuance of a "false and fraudulent purpose, design and conspiracy" to secure control of the Interstate Company, to wreck and destroy its properties and business, to "cheat and defraud" complainants out of a large part of the real market value of said bonds, towit, the difference between sixty-six and two-thirds per cent. of the par value of same and the amount actually received by complainants therefor, and to forever destroy said Interstate Company as a competitor of said Bell companies; that all of the defendants had notice that Evans, as president and director of the Interstate Company, was a "trustee" of the property and assets of said company for the benefit of the owners of said bonds; that the price paid for said bonds was less than the reasonable market value thereof prior to the time of said several acts done by Evans, that complainants

and other of the holders thereof were "induced" to accept a price below said sixty-six and two-thirds per cent. of the par value thereof solely by reason of the "false and fraudulent acts and representations" of said Evans and that they were "wholly ignorant" of said conspiracy; that "said agreement" made by Evans with Sunny of the Bell companies was in violation of his obligations and duties as an officer and director of the Interstate Company and of the "trust relation" which he bore to complainants as "creditors" of said company, and that said fund of $90,000 ought in equity and good conscience to be decreed "a trust fund" in the hands of Evans, and such other defendants as participated in the distribution thereof, and be held for the benefit of complainants and such other bondholders as may be entitled thereto; that complainants did not know until after said sales of the bonds that said Sunny and the Bell companies were interested in the transactions; and that none of complainants was in any manner a party to said "unlawful conspiracy and combination," and had no knowledge thereof until after said delivery of said bonds by them as aforesaid.

The bill prayed for a discovery as to the "transactions, contracts and agreements" involved in the purchase of the bonds, what moneys were paid therefor, and by whom and where; asked for the production of all writings, checks and receipts relating thereto; that said bank be required to disclose the source from which it received said fund with which payment for said bonds was made, and to whom was paid the balance of the fund remaining after the payments to complainants and others for said bonds; that Evans and Sunny account for the amount received on account of the purchase price of the bonds from the other defendants, and that they, and such other defendants as participated in the fund, be required to pay to complainants, and such others similarly situated as may join in this bill, the proportionate share due each of said fund,

and interest on such shares, and that Evans and Sunny be decreed to have held such sums as trustees for complainants and such others, and be compelled to make distribution, etc.

Each of the defendants severally filed a general and special demurrer to the bill, and on November 4, 1914, the court entered an order sustaining said demurrers, and each of them, and giving leave to complainants to file an amended bill within ten days. The court held as grounds for sustaining said demurrers: (1) That the allegations of the bill as to a conspiracy between the defendants, or certain of them, are too uncertain, indefinite and insufficient to support any decree; (2) that the allegations of fraud and deceit are too general and too indefinite to constitute a ground for equitable jurisdiction; (3) that the bill is multifarious; (4) that the several complainants, if they have any cause of action at all, have an adequate and appropriate remedy at law; (5) that complainants cannot invoke the aid of a court of equity on the ground of a multiplicity of suits, because it appears from the bill that if complainants have any cause of action each will be afforded an entire adequate remedy by means of a single action at law; and (6) that defendant Evans is not shown by said bill to have sustained such fiduciary relations with the several complainants as authorizes them to maintain a suit in equity on the ground that a trust is involved. On November 17, 1914, the court entered a final order dismissing the bill as to all defendants for want of equity, in which order it is recited that complainants had not filed an amended bill within the time limited and had elected to stand by their original bill. From such final order this appeal is prosecuted.

GIDEON S. THOMPSON, for appellants.

HOPKINS & HOPKINS, HOLT, CUTTING & SIDLEY, DAVID

F. HALL, W. B. MANN, E. E. BROWN and J. N. OTT, and TOLMAN, REDFIELD & SEXTON, for appellees.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

### Abstract of the Decision.

1. EQUITY, § 148*—when bill properly dismissed. Bill for discovery and accounting held properly dismissed for want of equity and because the allegations of fraud therein were too general, indefinite and insufficient and the existence of any trust relation between complainants and defendant set up in the bill was not sufficiently disclosed therein.

2. EQUITY, § 133*—when indefiniteness ground for dismissal of bill. A bill in equity which sets up conspiracy, fraud and deceit will be dismissed where the allegations in regard thereto are general, indefinite and unsufficient to warrant the granting of the relief sought.

### The People of the State of Illinois, Defendant in Error, v. Clarence A. Samuel, Plaintiff in Error.

### Gen. No. 21,503.   (Not to be reported in full.)

Error to the Municipal Court of Chicago; the Hon. JOHN STELK, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Reversed. Opinion filed April 28, 1916.

### Statement of the Case.

Clarence A. Samuel, defendant, was adjudged to be guilty of contempt of court and sentenced to pay a fine of two hundred dollars, and in default of the payment thereof that he be committed to the county jail, etc. To reverse this judgment, defendant prosecutes this writ of error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.